United States District Court
Southern District of Texas
**ENTERED**
March 31, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN DANIEL CANO, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | § |
| | § |
| KAREN FAUST, *et al.,* | § |
| | § |
| *Defendants.* | § |

Civil Action No. H-19-0317

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Daniel Cano filed an original (Docket Entry No. 1) and an amended complaint (Docket Entry No. 38) in this *pro se* state inmate section 1983 lawsuit. He sues Texas Department of Criminal Justice employees Charles James and James Jones (the "TDCJ Defendants") and University of Texas Medical Branch employees Karen Faust, Mark Varner, and Jaime Williams (the "UTMB Defendants") for violations of his constitutional rights.

The TDCJ Defendants filed an amended motion to dismiss (Docket Entry No. 40), to which plaintiff filed a response (Docket Entry No. 41). The UTMB Defendants filed a motion for summary judgment (Docket Entry No. 34), to which plaintiff filed a response (Docket Entry No. 39).

Having considered the motions, the responses, the original and amended complaints, and the applicable law, the Court **GRANTS** the amended motion to dismiss and motion for summary judgment and **DISMISSES** this case for the reasons shown below.

# I.  PROCEDURAL BACKGROUND

In his original complaint (Docket Entry No. 1), plaintiff raised claims against TDCJ Defendants James and Jones for retaliation, conspiracy, supervisory liability, deliberate indifference to medical needs, and failure to train and/or supervise.  The Court dismissed with prejudice the claims for conspiracy and supervisory liability, and dismissed without prejudice and with leave to amend the claims for retaliation, failure to train and/or supervise, and deliberate indifference to medical needs.  Plaintiff filed an amended complaint amending the latter three claims, which are the subject of the TDCJ Defendants' amended motion to dismiss.

Plaintiff also raised claims against the UTMB Defendants in his original complaint for supervisory liability, assault/use of excessive force, sexual assault, retaliation, conspiracy, deliberate indifference to medical needs, failure to supervise and/or train, and failure to intervene.  The Court dismissed with prejudice the claims for supervisory liability, sexual assault, and conspiracy, and dismissed without prejudice and with leave to amend the claims for retaliation and failure to supervise and/or train.  The Court retained plaintiff's original claims for deliberate indifference to medical needs, assault/use of excessive force, and failure to intervene.  Plaintiff's amended complaint amended the claims for retaliation and failure to supervise and/or train.  The UTMB Defendants' pending motion for summary judgment challenges plaintiff's claims for assault/use of excessive force, deliberate indifference to medical needs, failure to supervise and/or train, and failure to intervene.

2

To avoid unnecessary duplications, the parties' relevant arguments and factual allegations will be set forth below under each specific claim for relief. Generally, plaintiff alleges that he was given a rectal examination by UTMB Defendant Faust following his complaints of rectal bleeding and constipation. He states that the examination constituted an assault and/or use of excessive force because he did not expressly consent to an intrusive examination and the examination caused him physical pain and mental anguish.

## II.   THE TDCJ DEFENDANTS

### A.   Rule 12(b)(6) Dismissal

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss complaints when they fail to state a claim upon which relief can be granted. This rule, however, must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "threadbare recitals of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a

3

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

B.   <u>Retaliation</u>

Plaintiff asserts in his amended complaint that TDCJ Defendant James retaliated against him "for complaining to the ombudsman [*sic*] office about the assault and continual harassment that followed after reporting the incident, including denial of adequate medical care." (Docket Entry No. 38, p. 8.) His relevant allegations continue:

> On 7-4-18, plaintiff was called to the captain's office[.]  [A] short time later, defendant James walks in and begins to coerce him by telling plaintiff to fabricate a statement, stating that all his claims (assault, denial of medical care, and harassment) were lies and that if plaintiff did so, everything would go away and he would be alright, implying that the harassment would stop and plaintiff would receive medical attention.  After plaintiff refused he was taken to Ag-seg. . . .  Plaintiff was released from Ag-seg the next day.

4

*Id.*, pp. 8–9. Plaintiff then reiterates the same event in slightly different words:

> TDCJ Defendant James retaliated against plaintiff for exercising his First
> Amendment rights when he complained about his Eighth Amendment rights
> being violated. James proposed a deal to plaintiff that if he made a written
> statement stating that all the complaints he had alleged against Medical and
> Security Staff were false, James would assure the stop of harassment and
> provide adequate medical care to plaintiff. After plaintiff declined, James
> ordered him to Ag-seg where plaintiff was threatened some more, and
> continually denied medical care for his severe thyroid dysfunction and serious
> symptoms. It was obvious that the retaliatory motive for defendant James's
> adverse acts was the exercise of plaintiff's First Amendment rights when he
> complained to the ombudsman [*sic*] office.

*Id.*, pp. 9–10.[1]

To state a retaliation claim, a prisoner's well-pleaded facts must establish: (1) a
specific constitutional right; (2) the defendant's intent to retaliate against him for his exercise
of that right; (3) a retaliatory adverse act; and (4) causation, which requires the prisoner to
show that, but for the retaliatory motive, the adverse actions would not have occurred.
*Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *McDonald v. Steward*, 132 F.3d 225,
231 (5th Cir. 1998). Conclusory allegations without a specific factual basis are not sufficient
to state a claim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Woods
v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The relevant showing in such cases must be
more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v.
Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce

---

[1]Plaintiff also pleads factual allegations against a "Sergeant Reece" (Docket Entry No. 38,
p. 9), but Reece is not named as a defendant in this lawsuit and plaintiff was not granted leave to add
a new defendant. Plaintiff's factual allegations as to Reece are **STRICKEN FROM THE
AMENDED COMPLAINT** as improper and unauthorized pleadings.

direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted).

TDCJ Defendant James contends that plaintiff's factual allegations fail to raise a viable retaliation claim as a matter of law.  In support, he argues that, as to plaintiff's claim of being placed in administrative segregation for a day,  plaintiff must allege that: (1) he was engaged in constitutionally protected activity, (2) James's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and that (3) James's adverse actions were substantially motivated against his exercise of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  Plaintiff does not plead factual allegations sufficient to show that being placed in administrative segregation for one day was an injury that would chill a person of ordinary firmness from continuing to engage in pursuing his claims.  Moreover, plaintiff's own factual allegations clearly show that he continued his pursuit of his claims following James's alleged retaliatory acts.

James further argues that no viable retaliation claim is raised under *Woods* because, as a correctional officer, he played no part in plaintiff's medical care.  Plaintiff's own factual allegations show that medical staff had already diagnosed plaintiff's hypothyroidism and treated the condition with monitoring, testing, and medication.  James asserts that any retaliatory actions he allegedly took at a later time had no impact on plaintiff's medical

treatment. Plaintiff's factual allegations do not sufficiently plead that, but for James's actions, he would have received the type and level of medical care he believed he needed. Plaintiff's conclusory allegations of retaliation by James as to medical care are without a specific factual basis, and are not sufficient to state a viable retaliation claim. *Woods*, 60 F.3d at 1166.

To the extent plaintiff alleges that James verbally abused and harassed him in retaliation for his claims, no viable section 1983 claim is raised. A claim of verbal abuse or harassment is not cognizable in a federal civil rights action. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983."); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983.").

Consequently, plaintiff fails to raise a viable claim for retaliation against James, and James is entitled to dismissal of the claim. Because plaintiff has had three opportunities to raise a viable retaliation claim against James, the Court finds that plaintiff has pleaded his best case and that the dismissal should be with prejudice. Plaintiff's claims TDCJ Defendant James for retaliation are **DISMISSED WITH PREJUDICE**.

C.    Deliberate Indifference

Plaintiff claims that the TDCJ Defendants were deliberately indifferent to his medical needs in not providing him necessary medical care for his "thyroid dysfunction."

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference exists where a prison official knows of an excessive risk to inmate health or safety and deliberately disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The facts underlying a claim for deliberate indifference "must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff falls well short of pleading factual allegations sufficient to raise a viable claim for deliberate indifference. In his amended complaint, he asserts that the TDCJ Defendants were aware of plaintiff's grievances and complaints regarding lack of medical care for his "thyroid dysfunction," and that

> [t]herefore, defendants Jones and James knew of an excessive risk to plaintiff's health and safety, deliberately disregarded that risk *by refusing to treat him*, continually ignored plaintiff's complaints and engaged in conduct that clearly evinced a wanton disregard for his serious medical needs.

> Plaintiff has sufficiently pleaded factual allegations supporting a colorable claim against [Jones and James] in their individual capacity for deliberate indifference to plaintiff's medical need for further diagnosis of and treatment for his thyroid dysfunction and severe pain he was experiencing.

(Docket Entry No. 38, p. 12, emphasis added.)

8

These conclusory assertions of deliberate indifference are insufficient to raise a viable claim for deliberate indifference to medical needs against Jones and James.  Significantly, plaintiff pleads no factual allegations supporting his claim that Jones and James refused to treat him or that they had any authority to treat him or refuse to treat him.  Plaintiff acknowledges that Jones and James are TDCJ prison employees, not UTMB medical personnel.  Further, plaintiff pleads no factual allegations supporting a claim that the TDCJ Defendants instructed the UTMB Defendants to deny plaintiff treatment for his thyroid condition and that the UTMB Defendants accepted and followed the instructions.  Plaintiff fares no better in his response to the TDCJ Defendants' motion to dismiss; he sets forth applicable legal authority as to deliberate indifference, but fails to set forth any factual allegations supporting such a claim.  (Docket Entry No. 41, pp. 10–11.)

Consequently, plaintiff fails to raise a viable claim for deliberate indifference to medical needs against the TDCJ Defendants.  Because plaintiff has had three opportunities to raise a viable deliberate indifference claim against these defendants, the Court finds that plaintiff has pleaded his best case and that the dismissal should be with prejudice.  Plaintiff's claims against the TDCJ Defendants for deliberate indifference to his serious medical needs are **DISMISSED WITH PREJUDICE**.

D.    Failure to Supervise and/or Train

Plaintiff claims that the TDCJ Defendants failed to supervise and/or train subordinates, and that the failure resulted in a denial of medical care.

9

To state a claim for failure to supervise and/or train, a plaintiff must plead factual allegations showing that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference. *Gates v. Tex. Dep't of Protective & Reg. Services*, 537 F.3d 404, 435 (5th Cir. 2008). "[A] single incident is usually insufficient to demonstrate deliberate indifference." *Farmer*, 511 U.S. at 835. Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training or supervision "that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

In his amended complaint, plaintiff pleads the following factual allegations as relevant to his claims against the TDCJ Defendants for failure to supervise and/or train:

> TDCJ [D]efendants Jones and James failed to supervise and/or train subordinates that caused denial of adequate medical care to plaintiff's serious medical issues and harassment.
>
> *   *   *   *
>
> Some time in late June[] of 2018, plaintiff asked a family member to contact the ombudsman [*sic*] office and inform them of the harassment and denial of medical assistance because plaintiff complained of the assault by Faust.
>
> On 7-4-2018 . . . [a]fter refusing to dismiss the assault and harassment claims plaintiff was sent to Ag-seg for one day under orders by defendant James.

On 7-16-18, plaintiff filed a grievance on the matter and not surprisingly, all allegations were denied. Defendant Jones addressed the grievance.

Plaintiff had submitted numerous grievances and at least a couple of them were addressed by either defendant Jones or James, making them aware of plaintiff's specific situation, mainly, the need of a medical evaluation for his thyroids. But even if the grievances weren't enough, after being contacted by the ombudsman [*sic*] office both Jones and James were made aware of the harassment plaintiff was enduring by staff, including the denial of adequate medical care for severe pain and other symptoms due to his thyroid dysfunction because of the failure to supervise and train medical and security staff.

Plaintiff's numerous grievances also proves [*sic*] that the lack of training and supervision to staff that caused the violation to his constitutional rights was more than just a single instance. It was a pattern of similar violations that arose from training that was clearly so inadequate as to be obviously likely to result in a constitutional violation. Therefore, defendants Jones and James knew of an excessive risk to plaintiff's health and safety, deliberately disregarded that risk by refusing to treat him, continually ignored plaintiff's complaints and engaged in conduct that clearly evinced a wanton disregard for his serious medical needs.

(Docket Entry No. 38, pp. 10–12.)

Conclusory assertions of failure to train are inadequate to raise a claim under section 1983. *Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir. 1997). A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). A plaintiff must allege with specificity how a particular training program was constitutionally defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "Without notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to

have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff claims here that James and Jones were responsible for, but failed to provide, training and supervision of the UTMB Defendants as to his need for hypothyroid treatment. Plaintiff fails to allege with any factual support that James and Jones were responsible for training the UTMB Defendants as to medical care of thyroid conditions. Nor does he allege a pattern of similar constitutional violations, in that he makes no claim that other inmates at his unit were denied treatment for hypothyroidism. No causal connection is pleaded as between the TDCJ Defendants' actions or failures to act and the UTMB Defendants' alleged refusals to provide plaintiff certain thyroid treatments. Plaintiff's conclusory allegations of deliberate indifference fail to plead factual allegations sufficient to raise a viable claim for failure to train and/or supervise.

Because plaintiff has had three opportunities to raise a viable failure to train and/or supervise claim against the TDCJ Defendants, the Court finds that plaintiff has pleaded his best case and that the dismissal should be with prejudice. Plaintiff's claims against the TDCJ Defendants for failure to train and/or supervise are **DISMISSED WITH PREJUDICE**.

### III.   THE UTMB DEFENDANTS

A.   <u>Summary Judgment</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rogers v.*

*Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014); FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brackeen v. Haaland*, 994 F.3d 249, 290 (5th Cir. 2021) (en banc). The court is to view "all the facts and evidence in the light most favorable to the non-movant." *Ortega Garcia v. United States*, 986 F.3d 513, 524 (5th Cir. 2021). However, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original, quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories,

and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted).

B.    Qualified Immunity

The UTMB Defendants claim entitlement to qualified immunity as to plaintiff's claims against them. Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit Court of Appeals has emphasized that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

In addressing the qualified immunity issue, the district court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all—prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a

14

constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If the court finds that the plaintiff has alleged the violation of a constitutional right—a clearly established constitutional right—the court must then determine if the defendant official's action could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230. In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992). Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The "reasonableness" inquiry is an objective one; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004). A court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand.

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

As discussed below, the UTMB Defendants are entitled to qualified immunity, as plaintiff fails to meet his summary judgment burden of proof to establish a violation of his constitutional rights.

C.     Assault/Use of Excessive Force

Plaintiff alleges that, on January 23, 2017, he was seen at the TDCJ Huntsville Unit infirmary for complaints of "extreme stomach pain, constipation, rectal irritation, and bleeding." (Docket Entry No. 1, p. 6.)  He states that UTMB Defendant Faust, a physician assistant assigned to the Huntsville Unit infirmary, instructed him to lower his pants and turn around so she could apply medicated cream around his rectum to help stop the irritation. Plaintiff states he followed her instructions and that Faust then forced an unknown object into his rectum three times without warning or obtaining his express consent, causing pain and mental anguish. Plaintiff claims that UTMB defendant Faust violated his Eighth Amendment protections by assaulting him and intentionally using excessive force during the rectal medical examination. Consequently, plaintiff's claim against Faust is two-fold:  she failed to obtain his express consent before performing the invasive rectal examination, and she caused him pain by using unnecessary force during the examination.

It is a long-settled rule that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*,

16

430 U.S. 651, 670 (1977).  However, the medical records submitted by the parties refute plaintiff's claim that Faust intentionally inflicted pain or acted unreasonably during her examination of plaintiff on January 23, 2017.  On January 21, 2017, two days before the incident, plaintiff was seen in clinic with complaints of constipation, stomach pain, cramping, and bleeding after using the restroom.  He denied abdominal pain at the time, but stated he has "cramping" almost daily.  He reported bleeding from his rectum after bowel movements, (Docket Entry No. 34-2, p. 43.)  Physical examination by the clinic nurse revealed a soft, non-tender flat abdomen with normal bowel sounds.  Plaintiff denied having nausea or vomiting, fever, abdominal rigidity or distention.  *Id.*, p. 45.  He was given a January 23, 2017, appointment date to see a midlevel provider.  *Id.*, p. 47.

Plaintiff was seen in clinic by defendant Faust on January 23, 2017, for his complaints of abdominal discomfort, cramping, rectal bleeding, and constipation. (Docket Entry No. 34-2, p. 48–49.)  Faust recorded in the medical chart that plaintiff felt

> constipation and some cramping with intermittent rectal irritation and bleeding.  He reports [having a bowel movement] most every day sometimes every other day.  He reports stoll [*sic*] sometimes hard to pass and some intermittent rectal irritation and bleeding after [bowel movements]. He reports even though he has a [bowel movement] almost every day, he feel constipated. He tells me that he has had these [symptoms] off and on for about a year or more.

*Id.*, p. 48.  Faust noted that plaintiff's abdomen was positive for bowel sounds in all four quadrants, and that his abdomen was soft, non-tender, and without masses.  A rectal examination evinced good sphincter tone without masses, and a hemoccult "stool heme" test

17

was negative.  UTMB Defendant Varner was listed as a chaperone to the physical examination.  *Id.*  Faust prescribed oral Colace capsules twice a day to soften stools, and anusol hemorrhoidal cream for rectal irritation.  She noted that a kidney-ureter-bladder x-ray would be considered if plaintiff's symptoms persisted.  *Id.*, p. 49.

Plaintiff filed a step one administrative grievance against Faust on January 27, 2017. (Docket Entry No. 34-3, p. 5–6.)  He complained that, during his examination by Faust four days earlier, Faust told him that she would be applying a medical cream around his anus to stop the itching.  She instead forced an unknown object into his rectum three times without his consent, causing rectal and stomach pain. UTMB Defendant Williams responded to the grievance, stating that a rectal examination is a standard of care for complaints of abdominal discomfort, cramping, and constipation.  She stated that no force was used during the rectal examination, and denied plaintiff's grievance.  *Id.*, p. 6.  In his ensuing step two grievance, plaintiff disagreed with Williams's statement that the rectal examination was warranted due to the nature of his medical symptoms.  He further stated that state and federal law required Faust to obtain his express consent prior to performing an invasive rectal examination.  *Id.*, pp. 3–4.  A health services official replied to the grievance by reiterating that the rectal examination was undertaken to address plaintiff's complaints of constipation, cramping, rectal irritation and rectal bleeding.  *Id.*, p. 4.

The investigation report for plaintiff's grievances stated that plaintiff complained that Faust performed an unnecessary rectal examination without his consent and that it caused

18

him pain. *Id.*, p. 8. Faust provided the following written statement for the investigation report:

> [Patient] reported rectal bleeding, constipation. Rectal exam is standard of care for his complaints. [Plaintiff] was escorted to the ER where gloves, KY jelly, hemoccult cards and developer are kept. I asked for a chaperone – Mr. Varner, R.N., and instructed I would be doing a rectal exam to try to detect the source of bleeding.
>
> The [patient] was asked to lower his pants, lean over the exam table and use his hands to spread his buttocks. Visual exam was performed followed by single digit rectal exam. There was no screaming, complaints, or expressions of confusion or questions. Informed [patient] [that his stool] was negative for blood but prescribed hemorrhoid cream for reported rectal irritation. [Patient was] advised to return if persistent symptoms.

*Id.*, pp. 8–9.

In his response to the motion for summary judgment, plaintiff acknowledges that the rectal intrusions he experienced during the examination were the hemoccult test and developer, if not the single digit examination. (Docket Entry No. 39, p. 20.) Plaintiff insists, however, that Faust "violat[ed] plaintiff's rights for an opportunity to deny or concent [*sic*] to an intrusive examination." He admits that Faust used the KY lubricant to decrease any discomfort, but contends that Faust should have administered pain medication. He contends that his pain and discomfort proves that Faust had used unnecessary force in performing the examination. *Id.*, p. 21.

Plaintiff incorrectly argues that Faust's failure to obtain his express consent to the rectal examination violated his constitutional rights. "Consent," for purposes of medical care, is an issue of state law, not federal constitutional law. *See* TEX. CIV. PRAC. & REM.

CODE § 74.101; *Hollis v. United States*, 323 F.3d 330, 335 (5th Cir. 2003). A medical provider who renders medical services in absence of express or implied consent may be liable under state tort law for battery, but no Eighth Amendment right is at issue. *Hollis*, 323 F.3d at 335. Consequently, plaintiff's Eighth Amendment rights were not impinged if Faust performed a rectal examination and testing without his express consent. Plaintiff provides no legal support for his argument that he had an independent, constitutional right to deny or consent to the rectal examination. Nor does he present probative, competent summary judgment evidence that the rectal examination and insertion of testing and examination items would have been completely discomfort-free if performed in a reasonable manner.

A use of force by a prison official is excessive and violates the Eighth Amendment only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992).

In the instant case, plaintiff presents only his own conclusory belief that Faust applied force during the rectal examination maliciously and sadistically to cause harm. The medical records show that plaintiff complained to Faust of experiencing rectal bleeding and constipation, and that he wanted the problem evaluated and treated. In order to evaluate the

20

complaints, Faust performed a rectal examination and hemoccult testing. She applied a lubricant to ease insertion of the required items – a single digit and the hemoccult testing items – but plaintiff complains the examination still caused him physical discomfort and pain.

To defeat Faust's entitlement to qualified immunity, plaintiff must show that: (a) the law was clearly established at the time; and (b) all reasonable medical providers in Faust's position would have known that her conduct was unreasonable. Plaintiff present no probative, competent summary judgment evidence establishing that all reasonable medical providers in Faust's position would have known that her conduct in performing the rectal examination was unreasonable. Plaintiff was provided a necessary medical procedure and Faust took measures to make the intrusive examination tolerable. That plaintiff experienced pain or discomfort during the examination or did not expressly consent to the procedure does not transform the medical procedure into a violation of his constitutional protections. The probative summary judgment evidence does not show the Faust used force "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10.

UTMB Defendant Faust is entitled to summary judgment dismissal of plaintiff's claims against her for assault/use of excessive force, and the claims are **DISMISSED WITH PREJUDICE**.

D.    Deliberate Indifference

Plaintiff claims that the UTMB Defendants were deliberately indifferent to his serious medical needs in not providing him necessary medical care for his "thyroid dysfunction."

21

He further claims that the defendants refused to have his thyroid and digestive system examined by a medical specialist, and refused to provide him a medical care practitioner other than Faust.

"Deliberate indifference is an extremely high standard to meet." *Domino*, 239 F.3d at 756. A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson*, 501 U.S. at 297. Deliberate indifference exists where an official knows of an excessive risk to inmate health or safety and deliberately disregards that risk. *Farmer*, 511 U.S. at 836. The facts underlying a claim for deliberate indifference "must clearly evince the medical need in question and the alleged official dereliction." *Johnson*, 759 F.2d at 1238.

Unsuccessful medical treatment, negligence, neglect, and medical malpractice do not give rise to a section 1983 cause of action, and an inmate's disagreement with his medical care does not establish a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Even if a lapse in professional judgment occurred, such a failure would amount to mere negligence or malpractice, not a constitutional violation. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference, as it is used in context of the Eighth Amendment, requires more than mere negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in criminal law. *Farmer*, 511 U.S. at 839–40. A plaintiff must show with sufficient factual

allegations, not conclusory allegations, that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

The medical records submitted by plaintiff and the UTMB Defendants show that plaintiff was provided medical examinations, laboratory testing, evaluations, treatment, and medications for hypothyroidism by prison medical staff on a regular and continuing basis. The records indicate that plaintiff began taking medication for hypothyroidism in 2013. (Docket Entry No. 34-2, p. 88.) Records relevant to the UTMB Defendants show that Faust prescribed levothyroxine for treatment of plaintiff's hypothyroidism from April 2016 through April 2017. *Id.* pp. 3–12. From April 2017 through at least August 2017, medical provider Ruth Brouwer, PA-C, prescribed plaintiff's levothyroxine medication. *Id.*, pp. 25–28. The records also indicate that plaintiff refused treatment and left the prison medical clinic on two or more occasions in 2016 and 2017 because he was not seen quickly enough. *Id.*, pp. 30, 32. The records include thyroid and related diagnostic lab testing results reported in February 2017, March 2017, April 2017, August 2017, October 2017, November 2017, February 2018, and June 2018, *Id.*, pp. 50–59, 66–70, 73, 78–79, 88. Additional records

provided by plaintiff show that he continued receiving levothyroxine up through at least February 2021, well after the filing of the instant lawsuit. (Docket Entry No. 39, Exhibit C.) He was followed in the prison Chronic Care Clinic for treatment of his hypothyroidism and was provided on-going care, examinations, and evaluations for the condition during the times relevant to this lawsuit. (Docket Entry No. 34-2, pp. 56, 61–63, 68, 72, 74, 77, 78, 81– 88.)

Moreover, plaintiff fails to present probative summary judgment evidence demonstrating that the UTMB Defendants were deliberately indifferent to his need to have his "digestive system examined by a medical specialist." To the contrary, the medical records show that plaintiff was given on-going care, examinations, evaluations, treatment, and medications for his "digestive system" issues. Plaintiff does not show that the UTMB Defendants knew that failing to provide plaintiff a medical specialist posed an excessive risk to his health or safety and that they deliberately disregarded that risk. *Farmer*, 511 U.S. at 836. Plaintiff's disagreements with his medical care and the professional judgment and decisions of his medical providers do not rise to the level of constitutional issues.

Nor does plaintiff prevail on his claim that the UTMB Defendants refused to provide him a medical care provider other than Faust. To the contrary, the medical records show that plaintiff was examined, evaluated, and treated by medical care providers other than Faust following his complaints as to the incident of January 23, 2017. (Docket Entry No. 34-2, pp. 25–29, 61–62, 66, 68, 70, 73, 74, 77–78, 79, 88–89; Docket Entry No. 39-1, pp. 3, 33, 34, 36, 39.) Plaintiff claims he was told that only Faust could refer him to a specialist; however,

24

plaintiff's request for referral to a specialist was a disagreement with the type and level of care he was receiving, and no deliberate indifference is shown.

The medical records and other probative summary judgment evidence do not show that the UTMB Defendants refused to treat plaintiff, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for his serious medical needs. No deliberate indifference to plaintiff's serious medical needs is shown, and the UTMB Defendants are entitled to qualified immunity.

The UTMB Defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against them, and the claims are **DISMISSED WITH PREJUDICE**.

E.     Failure to Intervene

Plaintiff claims that UTMB Defendant Varner was present in the room when Faust assaulted him and/or used excessive force during the rectal examination, but that Varner failed to stop the proceeding. Construed liberally, plaintiff's allegations plead a claim against Varner for failure to intervene.

To prevail on a section 1983 failure to intervene claim against an officer, a plaintiff must prove that the defendant officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) was present at the scene of the constitutional violation; (3) had a reasonable opportunity to prevent the harm; and (4) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

The Court determined above that Faust's examination and treatment of plaintiff on January 23, 2017, did not violate his constitutional rights. Consequently, plaintiff does not establish that Varner failed to intervene for purposes of section 1983. UTMB Defendant Varner is entitled to qualified immunity.

The UTMB Defendants are entitled to summary judgment dismissal of plaintiff's claim for failure to intervene, and the claim is **DISMISSED WITH PREJUDICE**.

F.    Failure to Supervise and/or Train

Plaintiff further claims that UTMB Defendant Williams failed to supervise and/or train her subordinates. (Docket Entry No. 38, p. 3.) He further appears to argue that Williams failed to investigate and remedy his administrative grievances, or ensure that medical officials satisfactorily investigated and remedied the grievances.

To prevail on a claim for failure to supervise and/or train, a plaintiff must establish that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference. *Gates*, 537 F.3d at 435. "[A] single incident is usually insufficient to demonstrate deliberate indifference." *Farmer*, 511 U.S. at 835. Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training or supervision "that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge*, 336 F.3d at 370; *Thompson*, 245 F.3d at 459.

The UTMB Defendants contend in their motion for summary judgment that plaintiff fails to prove that they acted with deliberate indifference to his serious medical needs. The Court construes their argument as seeking summary judgment as to the instant claims predicated on plaintiff's failure to establish deliberate indifference. Because the Court determined above that plaintiff failed to prove his deliberate indifference claim against the UTMB Defendants, he likewise fails for the same reasons to establish this essential element of proof as it applies to his claims for failure train and/or supervise.

To the extent plaintiff also claims that Williams improperly investigated or denied plaintiff's grievances or failed to ensure that plaintiff's grievances were properly investigated or remedied, no constitutional violation is established. Prisoners have no constitutional right to a satisfactory investigation or resolution of their prison administrative grievances. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).

The UTMB Defendants are entitled to qualified immunity. The UTMB Defendants are entitled to summary judgment dismissal of plaintiff's claims for failure to train and/or supervise, and the claims are **DISMISSED WITH PREJUDICE**.

G.    Retaliation

Plaintiff claims that Faust used excessive force during the examination and treatment in retaliation for a grievance he had filed against her two weeks earlier. He further claims that the UTMB Defendants retaliated against him for his grievances by being deliberately indifferent to his serious medical needs for thyroid treatment following the incident. Because

27

the UTMB Defendants' motion for summary judgment does not specifically address these claims, the Court will consider, *sua sponte*, whether plaintiff's amended claims should be dismissed pursuant to Rule 12(b)(6).

To state a retaliation claim, a prisoner's well-pleaded facts must establish: (1) a specific constitutional right; (2) the defendant's intent to retaliate against him for his exercise of that right; (3) a retaliatory adverse act; and (4) causation, which requires the prisoner to show that, but for the retaliatory motive, the adverse actions would not have occurred. *Morris*, 449 F.3d at 684; *McDonald*, 132 F.3d at 231. Conclusory allegations without a specific factual basis are not sufficient to state a claim of retaliation. *Jones*, 188 F.3d at 325; *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted).

In pleading his amended claims for retaliation as to the UTMB Defendants, plaintiff alleges the following:

> On 12-30-16, plaintiff went to the infirmary due to [his] serious constipation problems, extreme abdominal pain, and swelling and bleeding of his rectal [*sic*]. After almost 6 hours in the waiting room without any information of what was taking so long to be attended, plaintiff asked the defendant Faust for the reason of the long delay. Faust then became belligerent and states [*sic*] that she didn't care about plaintiff's situation and ordered him to leave without medical care.

On 1-3-17, plaintiff filed a complaint against Faust for her inappropriate conduct and refusing him medical care, but also asking for medical assistance for his serious medical issues.

On 1-23-17, plaintiff once again goes to the infirmary by appointment to receive medical care. This time without major delay, Faust attends to him and after inquiring his symptoms, instructs plaintiff to lower his pants and turn around so that she could apply medicated cream around his rectal [*sic*] to help stop the irritation. Without any further warning or consent, Faust intentionally used excessive force by forcing an unknown object into plaintiff's rectum three times, leaving his rectum and stomach in severe pain.

(Docket Entry No. 38, p. 7.) Plaintiff alleges that Faust's actions, her denial of medical care for his thyroid condition, and her refusal to refer him to a specialist were in retaliation for the grievance he filed against her two weeks earlier. *Id.*

Plaintiff's grievance against Faust regarding the six-hour waiting time was apparently denied, as plaintiff alleges that UTMB Defendant Williams denied his grievances against Faust. Thus, plaintiff asserts that all of Faust's subsequent actions and denials of care stemmed from his one unsuccessful grievance against her. Plaintiff's factual allegations establish neither motivation or a chronology of events from which retaliation may be plausibly inferred, and his assertions show little more than his personal belief that he was a victim of retaliation. *See Johnson*, 110 F.3d at 310.

Plaintiff's factual allegations set forth in his amended complaint stop well short of the line between possibility and plausibility of entitlement to relief. Because plaintiff has had three opportunities to raise a viable retaliation claim against the UTMB Defendants, the Court finds that plaintiff has pleaded his best case and that the dismissal should be with

29

prejudice.  Plaintiff's claims for retaliation against the UTMB Defendants are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

## IV.  CONCLUSION

The Court **ORDERS** as follows:

1.  The amended motion to dismiss filed by the TDCJ Defendants (Docket Entry No. 40) is **GRANTED**, and plaintiff's claims against the TDCJ Defendants are **DISMISSED WITH PREJUDICE**.

2.  The motion for summary judgment filed by the UTMB Defendants (Docket Entry No. 34) is **GRANTED**, and plaintiff's claims against the UTMB Defendants are **DISMISSED WITH PREJUDICE**.

3.  Any and all other pending motions are **DISMISSED AS MOOT**.

This is a **FINAL JUDGMENT**.

**SIGNED** at Houston, Texas on the 30 day of March, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE